Michael M. GREEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–73–8.

Court of Criminal Appeals of Oklahoma.

July 2, 1973.

Newell E. Wright, Jr., McAlester, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Pittsburg County, Case No. M–73–195, appellant, Michael M. Green, hereinafter referred to as defendant, was convicted for the offense of Direct Contempt of Court and assessed punishment at six (6) months imprisonment. From that judgment and sentence, he has perfected his timely appeal to this Court.

On March 26, 1973, defendant appeared before the District Court of Pittsburg County, requested the court allow court-appointed counsel to withdraw as attorney of record, and further requested that he be permitted time in which to retain counsel of his own choosing as he had the necessary funds to employ said counsel. On April 3, 1973, defendant appeared before the Honorable Sam F. Stowers for preliminary hearing. At this time he had not retained counsel for the preliminary hearing and stated his reason for not obtaining counsel was that he had not raised the necessary funds to enable him to do so. Upon defendant's objection to proceeding to pre-

liminary hearing without counsel, the record reveals the following:

"MR. GREEN: Well, you can take your Court and cram it!

"THE COURT: You just have a seat back there.

"MR. GREEN: (Shouting) I ain't. I ain't. That's a lot of bull.

"OFFICER SUTTERFIELD: Here! Here! (Officer attempted to restrain Deft. Green. Another officer came to Mr. Sutterfield's assistance.)

"MR. GREEN: (Shouting) I'm going back to jail. I ain't sittin' down. (Scuffle ensues. Mr. Green hits at officers attempting to restrain him.)

"MR. GREEN: (Standing defiantly and shouting) I ain't sitting down! This is a lot of bull. I ain't goin' for this bull. No, I ain't sittin' down. This is a lot of bull. (Scuffle) This is a lot of baloney, that's what it is. I don't go for this bull.

"THE COURT: Mr. Green, your rights have been protected all the way through this by law and by this Court. And from the oaths and remarks being made by you, if I hear one more remark from you, I will hold you in contempt of Court.

"MR. GREEN: (Shouting) This is a bunch of bull. How come we can't have counsel?

"THE COURT: The Court holds you in direct contempt."

On a date following this incident, defendant was given an opportunity to be heard on the contempt charge. Defendant, represented by counsel at the hearing, admitted being in error in his conduct, further stating he had a violent temper and the combination of all events prior to this hearing resulted in his behavior. Following evidence presented by defendant and arguments of counsel, the above mentioned sentence was imposed.

Defense counsel in his only assignment of error suggests the punishment imposed by the trial court is excessive. Two reasons are submitted for argument on this point.

Counsel first submits a request for modification upon a plea for "compassion and understanding." This Court's authority for modification of a sentence is predicated upon the culmination of prejudice to the defendant from error occurring during the course of trial. "Compassion and understanding" is not a relevant consideration of a study of the penalty imposed and for this reason, this Court will not consider the penalty in light of this argument.

The second alternative submitted by counsel as ground for modification is a denial of due process resulting from the trial court's procedure in adjudicating the accused in contempt of court. It is his contention defendant has been deprived of due process as a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one rivaled by the contemptor. In the case at bench, the same judge who presided at the time the contemptuous conduct was observed was the same judge who presided over the proceeding wherein the defendant was heard in mitigation of punishment. In support of the above argument, defendant submits the case of Johnson v. Mississippi, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971). In that case the U. S. Supreme Court considered a distinguishable fact situation generally holding a state trial judge alleging an act being contemptuous of court alleged to have been committed by a civil rights worker should recuse himself from sitting at any hearing set at a later date for trial of the contempt charge where the trial judge is charged by affidavits prepared by counsel to have previously made intemperate remarks concerning civil rights workers generally and where immediately prior to the date of the contempt hearing, the judge was an unsuccessful party defendant in a civil rights suit filed by the alleged contemptor. The court held under the above facts that "it is plain that he was so enmeshed in matters involving petitioner as to make it most appropriate

for another judge to sit." We find the above facts clearly distinguishable from the case at bench and not in support of a mandatory disqualification of the sentencing judge in the instant case.

■ More closely in point with the instant circumstances is the case of Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), wherein the U. S. Supreme Court declared the due process clause of the Fourteenth Amendment required a judge other than the rival judge conduct contempt proceedings when during the trial defendant repeatedly engaged in disruptive conduct and denounced, insulted and shunned the judge, including calling the judge "dirty son of a bitch," "dirty tyrannical old dog," "stumbling dog," and "fool", charging him with running a "Spanish inquisition," and telling him to "go to hell" and "keep your mouth shut" culminating in the defendant receiving consecutive sentences totalling twenty-two years imprisonment for the above contemptuous offenses. In reciting the general rule that a trial judge who is so personally attacked by the contemptuous conduct must disqualify from hearing the contempt proceeding, the court in *Mayberry,* supra, stated not every attack on a judge disqualifies him from sitting in contempt proceedings based thereon. In stating the above general rule, the court recited with approval the decision and rule rendered in Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 846, 847, 11 L.Ed.2d 921 (1964). At pages 583 and 584 of the official opinion, the following language is found:

> "Assuming that there are criticisms of judicial conduct which are so personal and so probably productive of bias that the judge must disqualify himself to avoid being the judge in his own case, we agree with the New York court that this is not such a case.
>
> "It is true that Ungar objected strongly to the orders of the court and to its conduct of the trial during his examination. His final outburst, the subject of the contempt, was a flat refusal to answer, when directed by the court, together with an intemperate and strongly worded comment on the propriety of the court's ruling. But we are unwilling to bottom a constitutional rule of disqualification solely upon such disobedience to court orders and criticism of its rulings during the course of a trial. See Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415. We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions. Apparently because Ungar was being required to answer the questions asked rather than some others which he would rather have answered and because he was directed to cease volunteering testimony, Ungar claimed he was being 'badgered' and 'coerced' and that the court was 'suppressing the evidence.' This was disruptive, recalcitrant and disagreeable commentary, but hardly an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification."

We find the instant situation to be within the rule of *Ungar,* supra. The contemptuous conduct did not involve a personal attack upon the trial judge, nor was the trial judge so enmeshed in the matter involving the petitioner to require mandatory disqualification from his presiding over the contempt proceeding. For the above reasons, we find that there has been no legal basis submitted to the court to justify a modification of appellant's sentence for the offense of Direct Contempt of Court.

The judgment and sentence is affirmed.

BRETT and BUSSEY, JJ., concur.